FILED
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

SEP 1 - 1989

ROBERT L. HOECKER
Clerk

UNITED STATES OF AMERICA, )
)
    Plaintiff-Appellee, )
)
v. ) No. 88-2428
) (D.C. CR No. 88-292-JB)
) (D. New Mexico)
CHERYL CANNEDY, )
)
    Defendant-Appellant. )

ORDER AND JUDGMENT*

Before HOLLOWAY, Chief Judge, and SETH and McWILLIAMS, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

This appeal is from an order of the district court denying the defendant's motion to withdraw her plea of guilty to a felony charge in the United States District Court for the District of New Mexico. On appeal, the defendant asserts that her guilty plea was

---

* This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3.

not taken in accord with Fed. R. Crim. P. 11 and 32(d). Our study of the matter convinces us that any variance therefrom was only "harmless error." Fed. R. Crim. P. 11(h). We therefore affirm.

In 1985, a federal grand jury in the District of New Mexico indicted several individuals for the theft of Indian artifacts from the Old Santa Ana Indian Pueblo. Each individual who had committed such thefts plea bargained with the United States and, in exchange for a reduced sentence, agreed to cooperate with the government investigation by providing information concerning others involved in the burglaries. These individuals all named Cheryl Cannedy, the appellant in this appeal, as the one to whom they had sold the stolen artifacts under a prearranged understanding whereby they agreed to steal the artifacts and Cannedy agreed to buy them.

At this point in the investigation the United States contacted Cannedy's attorney and advised him of the status of the investigation and of the fact that a multicount indictment against Cannedy would be presented to the grand jury. Thereafter, discussions between the United States and Cannedy's attorney continued for several months concerning a possible agreement that Cannedy would plead guilty to the information, rather than be indicted. Cannedy's counsel was allowed to review the government's case file and was apprised of the fact that the actual perpetrators of the several burglaries had agreed to testify against Cannedy. After numerous meetings, it was agreed that Cannedy would waive grand jury presentment, plead guilty to one count of conspiracy and

would herself cooperate with the United States in its continuing investigation.

The parties also agreed that the United States Probation Office would make its investigation and complete its report before any appearance in court. On May 13, 1988, Cannedy and her counsel reviewed the presentence report.

On June 3, 1988, Cannedy and her counsel, along with an assistant United States Attorney, appeared in district court. At this hearing, Cannedy waived her right to be indicted by a grand jury and pled guilty to the information charging her with conspiracy to commit burglaries and larcenies in violation of 18 U.S.C. §§ 371, 661 and 1152 and N.M. Stat. Ann. § 30-16-3 (1978).

After allowing allocution by both Cannedy and her counsel, the district court sentenced Cannedy to four years imprisonment and permitted her to voluntarily surrender to federal authorities on a date certain. After twice extending the date Cannedy was to report to the Federal Correctional Institute at Fort Worth, Texas, the district court denied a third request and ordered her to report on September 6, 1988. On August 31, 1988, about three months after being sentenced, Cannedy, through new counsel, filed a motion to withdraw her guilty plea.[1] The motion was denied by

---

[1] Fed. R. Crim. P. 32(d) provides that where a motion to withdraw a plea of guilty is made <u>before</u> sentencing, the court may permit withdrawal upon a showing "of any fair and just reason." The rule further provides that where a motion to withdraw a plea of guilty is made <u>after</u> sentencing, the plea may be set aside "only on direct appeal or by motion under 28 U.S.C. § 2255." 28 U.S.C. § 2255 provides that a prisoner in custody under a sentence claimed to be in violation of the Constitution or laws of the United States "may move the court which imposed the sentence to vacate, set aside or correct the sentence."

-3-

the district court on September 2, 1988, and the district court thereafter denied Cannedy's motion to delay surrender pending appeal. The present appeal is from those orders. Neither Cannedy nor the United States desires oral argument.

Before considering the reasons given by Cannedy in the district court, and reurged here on appeal, for withdrawing her plea of guilty, we should examine a bit more closely the record as it existed at the time of the June 3, 1988, hearing when Cannedy pled guilty and received a four-year sentence. Both Cannedy and her attorney signed a waiver of indictment wherein Cannedy, after being advised of the nature of the charge and her right to grand jury presentment, waived prosecution by indictment and consented to a proceeding against her by information instead of indictment.

The information filed against Cannedy on June 3, 1988, charged her, in one count, with conspiring with Danny Kanteena and others, to commit burglaries and larcenies at the Old Santa Ana Pueblo in Indian country, contrary to 18 U.S.C. § 1152, 18 U.S.C. § 661, 18 U.S.C. § 371 and N.M. Stat. Ann. § 30-16-3 (1978). Under the heading of "Character of the Conspiracy," Cannedy was described as a self-employed buyer and seller of Indian pottery and other Indian artifacts. Danny Kanteena and the other unnamed conspirators were identified as members of the Laguna Indian Tribe.

The gist of the conspiracy was that Cannedy hired, in effect, Kanteena and others to commit burglaries and larcenies on her behalf at the Old Santa Ana Indian Pueblo by paying Kanteena and the others for the stolen objects, which objects Cannedy would

-4-

then sell at a substantial profit. The "Overt Acts" alleged were that Cannedy on several occasions rented a motel room in Albuquerque, New Mexico, where she conferred with Kanteena and others about proposed burglaries at the Pueblo, and that Cannedy had rented a car which was used by Kanteena to drive to the Pueblo where a burglary was in fact committed.

As indicated, negotiations between the government and Cannedy extended over several months and culminated in a "Memorandum of Understanding Regarding Guilty Plea" filed with the district court at the June 3 hearing. The memorandum was signed by Cannedy, her attorney, and an assistant United States Attorney. In that memorandum Cannedy stated that she desired and agreed to plead guilty to an information charging her with conspiring with Danny Kanteena and others to commit burglaries and larcenies occurring between April 17, 1985, and May 26, 1985, at the Old Santa Ana Pueblo. The United States in return agreed not to prosecute Cannedy for any other violations relating to burglaries and larcenies at the Santa Ana Indian Reservation. Also, the United States agreed to advise the United States Probation Office of Cannedy's "cooperation." Further, it was expressly agreed by the parties that the United States had not made, nor would it make, any agreement that any specific sentence would be an "appropriate" disposition of the case, nor would the government affirm, oppose, or not oppose, any request by Cannedy concerning the proper penalty to be imposed.

It was in this general setting that Cannedy, her attorney, and the United States Attorney appeared in the district court on

June 3, 1988, for the purpose of having Cannedy plead guilty to a charge of conspiracy and receive sentence therefor. As indicated, she had previously seen the probation report which had been prepared in advance of the court hearing and given to the judge prior to the hearing. The transcript of the hearing at which Cannedy pled guilty is a part of the record before us. Our study of that record leads us to conclude that there was substantial compliance with Fed. R. Crim. P. 11 and any variance or deviation therefor was only harmless under Fed. R. Crim. P. 11(h). In such circumstance, the district court did not err in denying Cannedy's somewhat belated request to withdraw her plea of guilty.

The first reason given by Cannedy for withdrawing her plea of guilty is that she didn't fully understand the conspiracy charge and there is a suggestion that she wasn't really guilty of that charge. The record belies the assertion. Cannedy and her counsel prior to sentencing did object to that part of the probation report which indicated that Cannedy "masterminded" the entire operation. Counsel advised the district court, before sentencing, that it was Kanteena and others who first contacted Cannedy about the matter.

Cannedy and her counsel agreed, however, that Cannedy knew about the burglaries _before_ they occurred and that she had agreed _before_ the burglaries to pay the burglars for the articles stolen. Also, counsel in his allocution stated that Cannedy had traveled to the Santa Ana Indian Reservation on several occasions when the burglaries took place. As an aside, counsel added that Cannedy "knew" enough about Indian pottery "to parley . . . ten thousand

dollars worth of pots into twenty thousand dollars worth of pots." In short, our study of the record indicates that Cannedy understood the charge to which she was pleading guilty and, most importantly, that she was in fact guilty of the crime charged, i.e., <u>conspiracy</u> to commit burglaries and larcenies at the pueblo.

As above indicated, the plea agreement signed by the Assistant United States Attorney and Cannedy and her attorney makes no mention of probation. To the contrary, the agreement provides that the United States would make "NO AGREEMENT" for a particular sentence in the case. Notwithstanding the fact that she signed this agreement, Cannedy in an affidavit filed with the district court in support of her motion to withdraw her plea stated that the plea agreement was supposed to have a provision therein that she would receive probation, and that her attorney had so advised. All we can go on is the record before us, and the agreement between the parties simply makes no mention of probation. Further, the record before us does not indicate that either Cannedy or her attorney even made a request for probation.

This is not a case where the district court rejected the agreement and then refused to allow the defendant to withdraw her guilty plea. This is a case where the district court accepted the agreement between the parties and, thereafter, refused to let the defendant withdraw her plea.[2] At the June 3 hearing Cannedy was

---

[2] The instant case is distinguishable from United States v. Theron, 849 F.2d 477 (10th Cir. 1988). There the defendant before sentencing sought to withdraw his plea of guilty. The district court denied the motion. On appeal, we reversed on the ground that the district court had failed to advise the defendant that if the district court rejected the government's recommendation of probation, the defendant had no right because of such rejection to

-7-

placed under oath and her statements made thereafter in open court should not be lightly set aside. United States v. Bambulas, 571 F.2d 525, 526 (10th Cir. 1978)(citing Hedman v. United States, 527 F.2d 20, 22 (10th Cir. 1975)).

Further, in the proceeding on June 3 the district court, inter alia, informed Cannedy and her counsel that upon her plea of guilty she could be sentenced to a term of imprisonment of up to five years and a fine of up to $250,000. Cannedy may well have had a secret hope that she would be given probation, but there is nothing in the plea agreement which lends any support to such hope. The bald statement by Cannedy in her affidavit that her attorney had told her she would be placed on probation is insufficient to contradict the written plea agreement between the parties. Further, we note that at the juncture in the court proceeding where the district court advised Cannedy that she could be sentenced to imprisonment for five years, neither Cannedy nor her attorney made any protest.

The other grounds urged by Cannedy for withdrawing her plea of guilty have been considered and none warrants a reversal. The fact that she may have subjectively thought she was to appear before a different judge than she actually did is of no moment. She had no right to appear before a particular judge. The fact that the hearing on June 3 was relatively brief is not grounds to withdraw the plea. It is agreed that the court appearance on June 3 was preceded by months of negotiation between the parties.

---

withdraw his plea. In the instant case, the government did not recommend probation and the district court, in fact, accepted the plea agreement between the parties.

The remaining grounds urged for withdrawal of the plea fall within the "harmless error" provision of Fed. R. Crim. P. 11(h), which states that "any variance from the procedures required by this rule [11] which does not affect substantial rights shall be disregarded." Obviously, this is a case where the defendant was disappointed with the sentence she received, but, under the described circumstances, that it is insufficient to require the district court to grant Cannedy's motion to withdraw her plea of guilty.

Counsel for Cannedy states in his brief that the "applicable standard" for a district court when considering a motion to set aside a plea of guilty after sentence is enunciated in Hill v. United States, 368 U.S. 424 (1962), where the Supreme Court stated that it is only "fundamental defect which inherently results in a complete miscarriage of justice . . .[or] an omission inconsistent with the rudimentary demands of fair procedure" which justifies the granting of such a motion. Id. at 428. We perceive no "fundamental defect" or "miscarriage of justice" in the present case.

In view of the foregoing, Cannedy's further contention on appeal that the district court erred in denying her request for a delay in her surrender date pending appeal is, if reviewable, purely academic. In this connection, the record indicates that Cannedy did not reurge in this court her request that the commencement of her sentence be delayed pending appeal.

Judgment affirmed. The mandate shall issue forthwith.

ENTERED FOR THE COURT

Robert H. McWilliams
Circuit Judge

-9-